■   VERONICA FORMAN, Respondent-Appellant, v ALAN DAVIDSON, Appellant-Respondent.—Judgment, Supreme Court, New York County, entered July 28, 1978, after jury trial, reversed, on the law, and the case remanded for a new trial, with costs to abide the event. This malpractice case derived from a dilation and curettage performed by defendant-appellant gynecologist on plaintiff-respondent in 1971. Within the following year, she exhibited abdomnial symptoms which were treated by defendant with antibiotics and anodynes. When she did not improve, she was sent to a radiologist for performance of a hysterosalpingogram. This was followed by a flare-up of the symptoms, leading to performance of an emergency laparotomy, disclosing a massive infection, surgically removed. The theory of liability disclosed by the bill of particulars and on which the trial was conducted was that defendant's original procedure was negligently performed, resulting in bowel and uterus perforation and consequent infection, and that the infection was masked, during a long period of delay, by administration of the antibiotics and painkillers. As a result of these experiences, plaintiff's physical condition has completely deteriorated to the point where she must be constantly treated and medicated, and her activity has been sharply curtailed. Defendant claimed that plaintiff came to him with a pre-existent pelvic inflammatory disease, salpingitis, apparently brought on by her history of social activity, necessitating the dilation and curettage, and that there had been perforation of the uterus, "a statistical risk," but that, if it had caused infection, she did not exhibit any sign thereof, and that there had been no bowel perforation at all. In any event, after both sides had rested, plaintiff's attorney sought to amend her complaint and bill of particulars to assert a new theory of liability: that defendant, knowing of plaintiff's internal condition, should not have referred her for the hysterosalpingogram because such a procedure is medically contraindicated in the presence of abdominal infection because of the irritating quality of the radio-opaque substance injected, and was the cause of the flare-up which followed this procedure; further, that this constituted malpractice. (This theory first saw light during the cross-examination of plaintiff's medical experts, but no attempt was made to introduce it formally into the case until this motion was made.) Over the objection of counsel and in the mistaken belief that there had been testimony on this score as part of plaintiff's case, and even implying that the theory had actually been mentioned in the bill of particulars, the amendment was permitted. A plea of surprise was rejected. And the court specifically charged the jury on the new theory. This belated injection of a new theory into the case, completely foreign to that disclosed by the bill of particulars, without notice and

without opportunity to prepare to meet it and refute it was obviously unfair and prejudicial to defendant. The bill specified malpractice at Doctor's Hospital (the dilation and curettage) with not a word of the radiological procedure. It is hornbook law that the purpose of pleadings, inclusive of the bill, is to provide a guide to the trial and to limit the issues. The pleadings and bill may not be ignored. It is not enough to justify injection of a new and surprising theory into a plaintiff's case to point out that defendant's counsel was prepared to cross-examine concerning a possible theory of liability other than that pleaded or particularized. That would be routine preparation for any good trial lawyer readying himself to endeavor to shake a witness' certainty. Further, a plaintiff must reveal the bases for claimed liability in a pleading and, should it be reasonably necessary to change or add a theory, to apply timely for permission to conform pleading to proof rather than to wait until completion of proof to sort out, evaluate, and label what has been presented to the trier of fact. (See *Lake v Lake,* 63 AD2d 960.) A trial is manifestly unfair when a party is suddenly called upon to defend on a theory belatedly brought into the case. To what extent the prejudice of this ruling operated will never be known, for the verdict was general. A new trial is required in these circumstances. "On the new trial the jury should be directed to return a special verdict or a general verdict accompanied by written answers to written interrogatories (see CPLR 4111), if multiple theories of malpractice are again involved *(Dore v Long Is. R. R. Co.,* 23 AD2d 502)." *(Killeen v Reinhardt,* 71 AD2d 851, 853.) Concur—Birns, J. P., Sullivan, Markewich and Lynch, JJ.

Fein, J., dissents in a memorandum as follows: The majority reverses and orders a new trial upon the ground that defendant was surprised by the introduction of a new theory of liability into the case at a time when the defendant was prepared only on a different theory. It cannot be disputed a trial is manifestly unfair when a party is suddenly called upon to defend on a theory belatedly brought into the case, one completely foreign to that claimed in the bill of particulars, and which is completely without notice or opportunity to prepare to meet it. But the plea of surprise should be based on actual surprise, not merely deficiencies in pleading. In essence the majority's ruling is that plaintiff's motion to amend her complaint and bill of particulars after both sides had rested should have been denied. Plaintiff says the majority, was permitted to inject into the case for the first time a new theory of liability that defendant, knowing of plaintiff's internal condition, should not have referred her for the hysterosalpingogram because such a procedure is medically contraindicated in the presence of abdominal infection, due to the irritating quality of the radio-opaque substance injected, and was the cause of the flare-up which followed this procedure, thus constituting malpractice. It is true that such specific claim is not asserted either in the complaint or in the bill of particulars. However, it is equally true that relatively early in the trial, during the cross-examination of plaintiff's witness, Dr. Stanley West, *defendant's* attorney asked Dr. West a series of questions injecting the hysterosalpingogram theory into the case for the first time and attempting to establish that all of the subsequently experienced symptoms of the patient were due to the hysterosalpingogram. Defendant's plain purpose was to show that this procedure was at least in part the source of plaintiff's problems. It is true that thereafter plaintiff's witness, Dr. Louis Gentile, similarly testified. That the defendant was prepared to deal with this problem is clear from his examination of Dr. Calem, defendant's first witness, in which that doctor asserted that he had made the decision as to subjecting plaintiff to the hysterosalpingogram. It is

plain that the case was tried upon this theory of liability and that the defendant was fully aware of this theory and tried his case on that basis. At the end of plaintiff's case her counsel moved to amend the pleadings to conform to the proof to permit the jury to rule on whether the defendant "erred in ordering a hysterosalpingogram". Although the court reserved decision, it denied defendant's motion to exclude this theory on the ground that it was not encompassed within the bill of particulars. As the court noted, this subject matter and theory had been litigated before the jury for at least a week. Defendant then interposed expert testimony that ordering the hysterosalpingogram was not malpractice and called the doctor who had actually performed the procedure and assumed the responsibility for it. As the Trial Judge noted, "I am inclined to believe that this was no surprise, this is a matter which the defendant had ample opportunity to consider and did consider with both Dr. Calem and Dr. Birnbaum, who advised the defendant over a year ago. I don't find any surprise and I don't find there is any prejudice. Accordingly the application to amend the bill of particulars to include the allegation that Dr. Davidson should have palpated the mass and operated, instead of ordering a hysterosalpingogram, is granted." The barrier to the amendment of bills of particulars and pleadings is prejudice. When no prejudice is shown the amendment is proper during or even after trial (*Murray v City of New York*, 43 NY2d 400; *Dittmar Explosives v A. E. Ottaviano, Inc.*, 20 NY2d 498). When a variance develops between a pleading and proof, amendment should be granted unless prejudice is plainly shown. On this record there is no such prejudice. The defendant had a full and fair opportunity to defend against the claim which was made early enough on the trial to alert defendant as to its nature. Defendant skillfully defended against the claim. His witnesses fully testified on the issue and plaintiff and her witnesses were thoroughly cross-examined with respect to it. Any surprise is purely formal. There was no actual prejudice. The judgment appealed from should be affirmed, with costs.